David M. Glover, Judge, dissenting. I respectfully dissent from the majority opinion in this case because I was left with a definite and firm conviction the trial court made a mistake in finding that Wilma Tapp’s granddaughter, M.H., was dependent-neglected. I would therefore reverse. The facts of this case are not in dispute—just whether those facts add up to dependency-neglect. Larry Tapp is M.H.’s putative father, and Wilma is Larry’s mother. M.H. has lived with Wilma since M.H. was two years old. Wilma has had custody of M.H. since M.H. was seven years old. When DHS took her into emergency custody, M.H. was fourteen, almost fifteen. Wilma acknowledged allowing M.H. to go to Larry’s house to see M.H.’s much younger halfsiblings. M.H. was apparently there three days and two nights prior to DHS involvement. Wilma also acknowledged an awareness that M.H.’s boyfriend went to Larry’s as well, but she said he was supposed to go home at night. When Wilma found out he had spent the night, she demanded he go home. Though she suspected Larry had a marijuana | ^problem, she stated there had never been any incidents when M.H. was there. It is important to note that in the twelve years prior to this episode, DHS had no involvement with M.H. and Wilma. There was no proof Wilma’s living conditions were unsuitable at the time M.H. was taken. At the time of the adjudication hearing, however, Wilma acknowledged she was in the midst of turning two storage units, connected by another addition, into a house. Her new house under construction is adjacent to another of her son’s and grandson’s homes. Her testimony was that her new house was not yet fit for her or M.H. to live in, but she and M.H. could live with either her other son, her grandson, or her sister, Wanda, until she finished construction. Her sister, Wanda, corroborated her testimony. The photos support the notion that Larry’s house was unfit to live in, but again, M.H. was only visiting Larry— she lived with Wilma, who is the person who had custody of M.H. Arkansas Code Annotated section 9-27-803(18)(A)(Repl. 2015) defines a “dependent-neglected juvenile as [A]ny juvenile who is at substantial risk of serious harm, as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile: (i) Abandonment; (ii) Abuse; (iii) Sexual abuse; (iv) Sexual exploitation; (v) Neglect; (vi) Parental unfitness; or (vii) Being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian. (Emphasis added.) Arkansas Code Annotated section 9-27-808 (36)(A) defines “neglect”: “Neglect” means those acts or omissions of a parent, guardian, custodian, foster parent, or any person who is entrusted with the juvenile’s care by a parent, | ^custodian, guardian, or foster parent, including, but not limited to, an agent or employee of a public or private residential home, child care facility, public or private school, or any person legally responsible under state law for the juvenile’s welfare, that constitute: (i) Failure or refusal to prevent the abuse of the juvenile when the person knows or has reasonable cause to know the juvenile is or has been abused; (ii) Failure or refusal to provide the necessary food, clothing, shelter, or medical treatment necessary for the juvenile’s well-being, except when the failure or refusal is caused primarily by the financial inability of the person legally responsible and no services for relief have been offered; (iii) Failure to take reasonable action to protect the juvenile from abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness when the existence of this condition was known or should have been known; (iv) Failure or irremediable inability to provide for the essential and necessary physical, mental, or emotional needs of the juvenile, including failure to provide a shelter that does not pose a risk to the health or safety of the juvenile; (v) Failure to provide for the juvenile’s care and maintenance, proper or necessary support, or medical, surgical, or other necessary care; (vi) Failure, although able, to assume responsibility for the care and custody of the juvenile or to participate in a plan to assume the responsibility; (vii) Failure to appropriately supervise the juvenile that results in the juvenile’s being left alone: (a) At an inappropriate age, creating a dangerous situation or a situation that puts the juvenile at risk of harm; or (b) In inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm; (viii) Failure to appropriately supervise the juvenile that results in the juvenile being placed in: (a) Inappropriate circumstances, creating a dangerous situation; or (b) A situation that puts the juvenile at risk of harm; or (ix) (a) Failure to ensure a child between six (6) years of age and seventeen (17) years of age is enrolled in school or is being legally home-schooled; or | u(b) As a result of the acts or omissions by the juvenile’s parent or guardian, the juvenile is habitually and without justification absent from school. My problems with the trial court’s decision include the following: • the fact that we are talking about a three day/two night period of time; • there had been no DHS involvement with Wilma and M.H. prior to the episode; • the deplorable living conditions were at Larry Tapp’s house, not Wilma’s; • Wilma allowed M.H. to go to Larry’s house because M.H. wanted to visit with her younger halfsiblings; • the episode leading to DHS involvement occurred at Larry’s house, not Wilma’s; • the physical encounter with M.H. involved Larry, not Wilma; • Wilma had a plan for appropriate living space if M.H. were allowed to come home; • M.H. was 14 years old, going on 15, i.e., she was not a helpless child who was allowed to go to her father’s house; • the circumstances of prior abuse by M.H.’s mother’s boyfriend do not seem to have been relied upon by the trial court; and • Wilma indicated in her testimony that she would no longer allow M.H. to visit Larry unless Larry remedied the conditions of his home. Here, if we were confronted with a finding of dependency-neglect concerning the four small children who were actually living with Larry, I would have no problem affirming. But we are not. Instead, M.H. just got swooped up into a mess at Larry’s house—-where she did not live. When you peel back the facts, the following scenario appears: • Wilma allowed M.H., who was 14 years old, to spend time with her father and young halfsiblings, knowing that M.H.’s sixteen-year-old boyfriend would be there, but not knowing until the visit was underway that he was also spending the night; • Wilma did not know how deplorable Larry’s living conditions were; • Wilma suspected Larry had a history of using marijuana, but she did not know of any incidents involving drug use and M.H.; and • Wilma had no way of knowing that a physical altercation would develop at Larry’s house. In addition, while the facts show that, due to new construction, Wilma’s living conditions at the time of the dependency-neglect hearing were not yet ready for M.H., her earlier government-subsidized housing had been fine during the extended time M.H. was living 11Kwith her. Moreover, Wilma had a plan for acceptable living arrangements until her own new house was completed if M.H. were returned to her. I am at a loss how these facts demonstrate M.H. was “at substantial risk of serious harm” because of “neglect.” No other statutory basis is even remotely applicable. In my opinion, a finding of dependency-neglect on these facts is clearly erroneous. I am authorized to state that Judge Hixson joins me in this dissenting opinion. Hixson, J., joins in this dissent.